IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LISA CRAIN; CATHEE CRAIN; MARILLYN CRAIN BRODY;
and KRISTAN CRAIN SNELL                                                           PLAINTIFFS

V.                                    CASE NO. 2:24-CV-2070

AIRPORT TRANSPORTATION COMPANY; and
SHIRLEY CRAIN                                                                      DEFENDANTS

### OPINION AND ORDER

Before the Court is a Motion to Dismiss (Doc. 9) with accompanying Brief in Support (Doc. 10) filed jointly by Defendants Shirley Crain ("Shirley") and Airport Transportation Company ("ATC"). Plaintiffs Lisa Crain, Cathee Crain, Marillyn Crain Brody, and Kristan Crain Snell (collectively, "Crain Sisters") filed a Response in Opposition to the Motion (Doc. 12) and a Brief in Support (Doc. 13). On November 13, 2024, the Court held an in-person hearing and entertained oral argument on the Motion, ultimately **DENYING** it from the bench. Below is a more fulsome explanation of the Court's ruling. To the extent anything in this Order differs from what was stated during the hearing, this Order controls.

### I. BACKGROUND

The Crain Sisters are minority shareholders of ATC, a closely held corporation. Their stepmother, Shirley, is the majority shareholder who manages the affairs of the company. The Complaint alleges that Shirley, individually as majority shareholder, breached the fiduciary duties she owes to the Crain Sisters as minority shareholders. The Complaint also accuses both Shirley and ATC (acting at Shirley's direction) of failing to furnish the Crain Sisters with ATC's annual financial statements, as Arkansas Code § 4-

1

27-1620 requires; refusing to allow the Crain Sisters to inspect ATC's accounting records pursuant to Arkansas Code § 4-27-1602(b); denying the Crain Sisters the opportunity to inspect ATC's articles, bylaws, resolutions, minutes, communications with shareholders, and financial statements in accordance with Arkansas Code § 4-27-1602(a); and engaging in minority shareholder oppression.

Shirley and ATC make a threshold argument that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Shirley and ATC contend that the causes of action in the Complaint may plausibly be construed as shareholder derivative actions brought on behalf of and for the benefit of ATC—which means that ATC should be considered a plaintiff for diversity purposes. Since ATC and Shirley are both citizens of Arkansas, if the Court deemed ATC both a plaintiff and a defendant, this would destroy diversity. In addition, Shirley and ATC argue that the Complaint fails to plausibly allege the minimum amount in controversy necessary for federal subject matter jurisdiction. They contend that damages cannot be aggregated and that each sister must meet the minimum amount individually, which Shirley and ATC claim is impossible, given the nature of the relief requested.

Alternatively, the Motion to Dismiss urges the Court to abstain from hearing the case because parallel proceedings concerning the same subject matter are taking place in state court. Shirley and ATC cite to a lawsuit pending in Benton County Circuit Court between the Crain Sisters and a different, though related, corporate entity called Regional Jet Center.

Finally, the Motion to Dismiss suggests that if the previous arguments are rejected, the Complaint must be dismissed under Rule 12(b)(6) because the claims are moot, collaterally estopped, or implausible.

## II. DISCUSSION

### A. Subject Matter Jurisdiction: Diversity and Amount in Controversy

Shirley and ATC contend that the Court lacks subject matter jurisdiction for two reasons. First, they argue that the Complaint should be construed as stating both direct and derivative shareholder claims. If the Court were to agree, then Shirley and ATC maintain that ATC would need to be joined as a party plaintiff, since derivative shareholder suits are brought for and on behalf of the corporation. But because ATC and Shirley are both Arkansas citizens, joining ATC as a plaintiff would destroy diversity. Second, Shirley and ATC argue that even if the parties were completely diverse, the Court would lack subject matter jurisdiction because each individual Plaintiff's damages do not exceed $75,000, the minimum required under 28 U.S.C. § 1332.

The Court begins its analysis by considering whether the Complaint asserts derivative shareholder claims. A shareholder may bring a direct suit if she has suffered an injury that is distinct from the harm caused to the corporation. *See Underwood v. Underwood*, 2024 Ark. App. 51, at 13 (2024) (citing *Golden Tee, Inc., v. Venture Golf Schs., Inc.,* 333 Ark. 253, 260 (1998). Here, the Crain Sisters allege that the majority shareholder, Shirley, has injured each of them, as minority shareholders, by engaging in oppressive tactics in violation of Shirley's fiduciary obligations to the corporation and by refusing to allow the Crain Sisters to examine ATC's accounting records, articles, bylaws, resolutions, minutes, communications with shareholders, and financial statements. "A

shareholder may bring a derivative action on behalf of a corporation to enforce a right of the corporation when the corporation has failed to do so." *Muccio v. Hunt*, 2014 Ark. 35, at 8 (2014) (citing Ark. R. Civ. P. 23.1). But a shareholder is not *required* to bring a derivative action when her individual harm overlaps with harms suffered by the corporation; instead, she may choose to assert only a direct claim. *Hames v. Cravens,* 332 Ark. 437, 442 (1998).

The Arkansas Supreme Court has held that a direct claim is appropriate "to enforce that shareholder's voting rights, to compel the payment of dividends, or to protect minority shareholders." *Id.* Here, the Crain Sisters' lawsuit seeks to protect their individual rights as minority shareholders. They do not accuse Shirley of damaging ATC's corporate health and interests in any particular way or seek to enforce ATC's rights where ATC has failed to do so.[1] Therefore, the Court declines to join ATC as a party plaintiff.

As for the $75,000 jurisdictional minimum, "[i]f the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Peterson v. Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017) (quoting *Kopp v. Kopp*, 280 F.3d 883, 884–85 (8th Cir. 2002)). A complaint that alleges "the jurisdictional amount in good faith will be dismissed only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Am. Fam. Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc.*, 912 F.3d 1076, 1080–

---

[1] Furthermore, realigning the parties would not be appropriate—even if some claims could plausibly be construed as derivative—because ATC has joined in Shirley's Motion and taken a position adverse to that of the Crain Sisters. In *Smith v. Sperling*, 354 U.S. 91, 96–97 (1957), the Supreme Court opined that if "the management is antagonistic to the stockholder" and "refuses to take action" or opposes "the enforcement of the claim," the trial court should not join the corporation as a plaintiff for diversity purposes. In the case at bar, it is clear that ATC opposes the enforcement of the Crain Sisters' claims.

81 (8th Cir. 2019) (quotation marks and alteration omitted). "The legal certainty standard is met where the legal impossibility of recovery is so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Peterson*, 867 F.3d at 995 (cleaned up). The Court may make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that the jurisdictional amount is in controversy.

Shirley and ATC maintain that the amount in controversy must be met by each individual Plaintiff and cannot be aggregated. This appears to be a correct statement of the law. Generally, "separate and distinct claims [can]not be aggregated to meet the required jurisdictional amount." *Snyder v. Harris,* 394 U.S. 332, 336 (1969). In the Ninth Circuit case of *Eagle v. American Telephone & Telegraph Co.*, 769 F.2d 541, 547 (9th Cir. 1985), the court approved aggregating the amount in controversy among the individual shareholders because all claims were *derivative* in nature and "rooted in an injury to the assets of the corporation." By contrast in the case at bar, all claimed injuries are *individual* in nature (despite the fact that all Plaintiffs claim the same injuries and request the same relief).

Nevertheless, when the Court examines the damages claimed by each Plaintiff, it is not legally impossible that each one has stated a claim for damages in excess of $75,000. Each Plaintiff demands her share of profits unlawfully retained by ATC for 2022 and 2023, a statutory award of attorney's fees, an award of damages for breach of fiduciary duty by Shirley, and an interest in the value of the company as a whole, since the Complaint requests as a potential remedy the dissolution and liquidation of ATC. The

Court therefore finds that Shirley and ATC have failed to prove to a legal certainty that each Plaintiff's claims fail to meet the jurisdictional minimum.

## B. *Colorado River* Abstention

In the alternative to the argument stated above, Shirley and ATC urge the Court to abstain from making rulings in the instant lawsuit because a similar suit is already pending in state court. The Crain Sisters filed an action in the Circuit Court of Benton County, Arkansas, on December 21, 2022, alleging shareholder individual and derivative claims against Shirley and an entity called Regional Jet Center, Inc. ("RJC"). *See* Doc. 9-2. The state court lawsuit accuses Shirley—as RJC's sole Class A shareholder and exclusive decisionmaker—of mismanaging the company, engaging in self-dealing, subverting the interests of both RJC and its shareholders in favor of Shirley's own personal and business interests, disregarding corporate transparency, withholding distributions of company profits, and wasting corporate assets. Although the suit originally contained both direct and derivative shareholder claims, the Crain Sisters recently dismissed all of their direct claims because RJC made an elective distribution of profits. *See* Doc. 13, p. 13. Accordingly, the only claims pending in the RJC suit are derivative shareholder claims.

The Court observes that abstention in favor of a state-court proceeding is typically disfavored. "Generally, a federal district court must exercise its jurisdiction over a claim unless there are exceptional circumstances for not doing so." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005) (internal quotation marks omitted). Federal courts have "the virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Under the *Colorado River* abstention doctrine, prudent judicial administration may warrant "the dismissal of a federal suit due to the presence of a concurrent state proceeding." *Id.* However, this sort of abstention requires two preliminary findings: (1) that the pending state and federal cases are "parallel" and (2) that "exceptional circumstances" warrant abstention. See *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009). "Parallelism" requires more than the pendency of a state claim "based on the same general facts or subject matter as a federal claim and involving the same parties." *Id.* at 535. Instead, the Court must find that "substantial similarity" exists between the two proceedings such that "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* To make such a finding, the Court compares the "sources of law, required evidentiary showings, measures of damages, and treatment on appeal" for each claim. *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (quoting *Fru-Con*, 574 F.3d at 536). "[I]f there is any doubt as to the parallel nature of the state and federal proceedings," the Court must exercise jurisdiction. *Fru-Con*, 574 F.3d at 536.

Quite obviously, the state court suit and the instant one are not parallel. The state court suit involves the Crain Sisters and RJC, while the instant one involves the Crain Sisters and ATC. Though Shirley controls both companies and has been named a party in both suits, the companies themselves are distinct. Furthermore, the RJC suit involves only derivative shareholder claims made by the Crain Sisters on behalf of RJC, while the ATC suit involves only individual shareholder claims. Finally, it is unclear how any remedy fashioned by the state court as to RJC will ostensibly affect ATC. Accordingly, the Court finds no basis for abstaining.

7

### C. Failure to State a Claim under Rule 12(b)(6)

If the Court declines to dismiss the case under Rule 12(b)(1) or abstain under *Colorado River*, Shirley and ATC maintain that all claims should be dismissed under Rule 12(b)(6). They contend that the Crain Sisters' claims related to accessing financial and corporate records are now moot, as all relevant documents have been produced to them in the RJC proceeding. The Crain Sisters disagree. *See* Doc. 13, pp. 16–18. They claim they are still waiting to see the ATC documents that they are entitled to under Arkansas law. The Court must assume that the facts in the Complaint are true when evaluating a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Complaint plausibly asserts that not all documents have been disclosed, the Court must take these assertions as true and not dismiss the claims relating to document access.

Next, Shirley and ATC suggest that the Crain Sisters should be collaterally estopped from claiming entitlement to stock distributions because the judge in the RJC suit refused to order RJC to do the same. This argument lacks merit because the state court suit and the instant one are not parallel, so none of the state court's rulings as to RJC have a preclusive effect on ATC. *See supra*, Section II.B.

Finally, Shirley and ATC argue that the Crain Sisters have failed to state a plausible claim against Shirley for shareholder oppression. The parties agree that Arkansas recognizes such a claim. *See Taylor v. Hinkle*, 360 Ark. 121, 129 (2004). Shirley and ATC insist that the word "oppressive" contemplates a continuing course of conduct consisting of harsh, dishonest, or wrongful acts—which they contend have not been adequately pleaded here. The Crain Sisters respond that their Complaint plausibly asserts the following oppressive conduct by Shirley: (1) failing to inform them of shareholder

meetings; (2) acting unilaterally without their input; (3) failing to provide them with ATC's corporate governance documents; (4) refusing to distribute profits; (5) issuing K-1s for retained profits, which required the Crain Sisters to pay taxes on said undistributed profits; and (6) refusing to turn over corporate and accounting records that might demonstrate Shirley's additional breaches of fiduciary duties. *See* Doc. 2, ¶¶ 49–53. The Court agrees with the Crain Sisters that the Complaint plausibly states a claim for shareholder oppression.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 9) is **DENIED**.

**IT IS SO ORDERED** on this 18th day of November, 2024.

                                                TIMOTHY L. BROOKS
                                                UNITED STATES DISTRICT JUDGE